Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton.
En esta ocasión nos vemos obligados a disentir de lo resuelto por una mayoría de este Tribunal, principalmente, por entender que la Ley Núm. 281-2008 (Enmienda del 2008) es de aplicación prospectiva. Así las cosas, opinamos que la definición de apartamento establecida en el Art. 3 de la Ley de Condominios de 2003 (31 L.P.R.A. sec. 1291a), es la que aplica a la controversia ante nos y no la Enmienda del 2008 como concluye la Opinión del Tribunal. Como con-secuencia, revocaríamos la Sentencia del Tribunal de Ape-laciones y desestimaríamos la querella presentada por la Sra. Sylvia Trigo Margarida. Por lo tanto, el área superficial de la azotea, anejo de su apartamento, quedaría in-cluida al computar su participación sobre los elementos co-munes del inmueble.
I
Entendemos que la Opinión mayoritaria describe ade-cuadamente los hechos que originan la controversia de autos, por lo que es innecesario reseñarlos nuevamente. Aun así, es necesario destacar tres hechos importantes. En primer lugar, el condominio El Campeador fue constituido en conformidad con el régimen de propiedad horizontal en 1972. La cuota de participación sobre los elementos comu-nes se calculó a base del valor de la propiedad, según lo dispuesto en la legislación vigente en ese momento. Se-gundo, en el 2009, el Consejo de Titulares llevó a cabo una votación para cambiar el criterio de participación sobre los elementos comunes de manera que esta se computara a *419 base del área superficial del apartamento. Por último, la peticionaria es la dueña del penthouse del condominio, que tiene como anejo la azotea, y se niega a aceptar que su participación se vea afectada por la referida votación. Ante esa situación, procedemos a discutir el derecho aplicable.
II
La controversia ante nuestra consideración es si el área de la azotea adscrita al apartamento de la señora Trigo Margarida debe ser excluida al computar su participación sobre los elementos comunes. Para esto, es necesario deter-minar la Ley de Condominios aplicable al condominio El Campeador, constituido en 1972.
A. Ley de 1976
Antes de la Ley Núm. 157 de 4 de junio de 1976, el cálculo sobre las participaciones de los titulares se compu-taba a base del valor de la propiedad. Como resultado de la aprobación de este estatuto se eliminó el criterio del valor de la propiedad y se sustituyó por el de superficie del apartamento. Esto quedó plasmado en el Art. 8 de esa ley al establecer que
[e]l titular tendrá derecho exclusivo a su apartamiento y a una participación con los demás titulares en los elementos comu-nes del inmueble, equivalente al porcentaje que represente la superficie del apartamiento en la superficie de la totalidad de apartamientos en el inmueble. En caso de apartamientos con dos o más niveles se considerará la superficie de cada nivel. 1976 Leyes de Puerto Rico 484, 487.
A su vez, en su Art. 3, esta ley definía apartamiento como
... cualquier unidad de construcción, suficientemente delimi-tada, consistente de uno o más espacios cúbicos, cerrados, par-cialmente cerrados, o abiertos, y sus anejos, si algunos, aun-que éstos no sean contiguos, siempre que tal unidad sea susceptible de cualquier tipo de aprovechamiento indepen- *420 diente, siempre que tenga salida directa a la vía pública o a determinado espacio común que conduzca a dicha vía. Leyes de Puerto Rico, supra, pág. 487.
Así, los anejos quedaron incluidos como parte del área superficial que se computaba para determinar la participa-ción de cada titular sobre los elementos comunes. No obs-tante, aquellos condominios que estaban sometidos al régi-men de propiedad horizontal con anterioridad a la vigencia de la Ley de 1976 —según el criterio del valor de la propie-dad— debían contar con el voto de dos terceras partes de los titulares que, a su vez, representaran las dos terceras partes del valor en los elementos comunes para cambiar al nuevo criterio. Sec. 13 de la Ley Núm. 157, supra, Leyes de Puerto Rico, pág. 511. O sea, que esta ley, en su Sec. 13, dejaba en manos de los titulares de condominios inscritos antes de 1976 la opción de cambiar el criterio para compu-tar la participación de cada uno sobre los elementos comunes.
Según surge de la Exposición de Motivos, la aprobación de esta ley era inminente para revisar varios aspectos del régimen de propiedad horizontal que dificultaban la vida en comunidad. En particular, una de las limitaciones más importantes de la ley que estaba vigente, la cual utilizaba el criterio de valor de la propiedad, era la falta de criterios objetivos para determinar el porcentaje de participación en los elementos comunes que correspondería a cada apartamento. Véase Exposición de Motivos de la Ley Núm. 157, supra, pág. 485.
B. Ley del 2003
Con la aprobación de la Ley Núm. 103-2003, tanto la definición de apartamento como el criterio del área superficial para computar las referidas participaciones quedaron inalterados. Ahora bien, la Ley del 2003 no incluyó la op-ción establecida en la Sec. 13 de la Ley de 1976 de que los titulares pudieran votar para cambiar el criterio que utili- *421 zarían para computar sus participaciones sobre los ele-mentos comunes. Por ello, no estamos de acuerdo con lo que plantea la Opinión mayoritaria en cuanto a que la Ley del 2003 no enmendó ni derogó “la salvedad y especifica-ción que hizo el legislador en la Sec. 13 de la Ley Núm. 157, supra [Ley del 1976]”. Opinión mayoritaria, pág. 398. Por el contrario, sostenemos que esa opción de cambiar el criterio fue eliminada con la aprobación de la Ley del 2003, la cual aplica retroactivamente a todos los condominios in-dependientemente del momento de su constitución, según el Art. 44 de esa ley (2003 (Parte 1) Leyes de Puerto Rico 355, 410) y lo resuelto en Consejo Titulares v. Williams Hospitality, 168 D.P.R. 101 (2006).
En específico, el Art. 44 de la Ley del 2003, Leyes de Puerto Rico, pág. 410, establece que esta “entrará en vigor noventa (90) días después de su aprobación y sus disposi-ciones regirán a todo inmueble sometido al Régimen de Propiedad Horizontal, cualquiera que sea el momento en que fuera sometido a dicho régimen”. Luego de evaluar este artículo junto con la intención legislativa, este Tribunal determinó que la Ley del 2003 aplica retroactivamente, pues no hacerlo equivaldría a laurear actuaciones que el estado de derecho vigente conjura y estaríamos incum-pliendo, entonces, con la intención legislativa. Consejo Titulares v. Williams Hospitality, supra, pág. 110. Allí indi-camos que, con miras a atacar de frente las situaciones indeseables que surgían a base de la legislación anterior, el legislador dispuso en el Art. 44 que el momento jurídico en que el inmueble haya sido sometido al régimen no da lugar a distinción alguna en cuanto a la aplicación de la ley. Aña-dimos que esto surge, no solamente del texto de esta, sino también de la clara intención del legislador de frenar los abusos a los que la legislación anterior contribuía. (Enfasis suplido). Consejo Titulares v. Williams Hospitality, supra, pág. 107.
*422 Al respecto, la Exposición de Motivos de la Ley del 2003 expone la necesidad de que el régimen de propiedad horizontal tuviese mayor eficacia. En ese sentido, aclara que
... no empece la conveniencia de introducir enmiendas a la legislación vigente, los ajustes que conviene hacer a nuestro sistema de la horizontalidad —establecido inicialmente por la Ley 104 del 25 de junio de 1958 y mejorado luego por la Ley 157 del 4 de junio de 1976— no deben llevar a la creación de un “nuevo” régimen de propiedad horizontal, ya que los prin-cipios fundamentales de nuestro sistema deben conservarse porque la práctica ha demostrado que son apropiados para la consecución de los fines sociales que este esquema persigue. Exposición de Motivos de la Ley Núm. 103-2003, supra, pág. 356.
Asimismo, tras la aprobación de la Ley del 2003, el Prof. Michel J. Godreau Robles publicó su obra La nueva Ley de Condominios: guía básica para entender el régimen de la propiedad horizontal según la Ley 103 del 5 de abril de 2003, San Juan, Ed. Dictum, 2003. En esta sugiere varias medidas para “atemperar los reglamentos y divulgar las nuevas disposiciones de la Ley”. (Enfasis suplido). Id., pág. 59. Es decir, a partir de la aprobación de la Ley del 1976, los condominios constituidos previos a 1976 podían optar por seguir computando sus cuotas a base del valor de la propiedad o cambiar dicho cómputo por el del área superficial mediante la votación requerida por la Sección 13 de este estatuto. No obstante, a partir del 2003, todos los con-dominios debían ajustar sus escrituras y reglamentos para cumplir cabalmente con las disposiciones de la Ley del 2003, incluyendo computar sus participaciones sobre los elementos comunes utilizando el área superficial. Eviden-temente, el legislador, al incluir que la Ley del 2003 le aplicará a todos los condominios independientemente del momento de su constitución, remplazó la opción expuesta en la Sec. 13 de la Ley de 1976 que tenían esos condomi-nios por la obligación de cumplir con las disposiciones de la Ley del 2003.
*423 C. Enmienda del 2008
Posteriormente, la Asamblea Legislativa aprobó la En-mienda del 2008 cuyo propósito principal era enmendar el Art. 3 de la Ley del 2003 para aclarar cuándo los anejos formarán parte del área superficial computada para esta-blecer la participación de cada apartamento, según lo esta-blecido en la Escritura Matriz. En la Exposición de Motivos de esta ley se afirma que
... esta Asamblea ha advenido en conocimiento de que en la práctica actual para la creación de regímenes de horizontali-dad en Puerto Rico y al momento de redactar, preparar e ins-cribir las escrituras matrices y los planos constitutivos de dichos regímenes, los desarrolladores, notarios, registradores y el público en general, están enfrentando una confusión generada por la interacción entre el Artículo 3 y el Artículo 8 de la Ley Núm. 104, según enmendada por la Ley Núm. 103, y los efec-tos de esta interacción en el cómputo de la medida superficial de los apartamientos y sus respectivos por cientos de partici-pación en los elementos comunes de un condominio
De mantenerse la Ley de Condominios vigente sin esa aclara-ción, persistirá la confusión sobre el concepto de los anejos y cuál debe ser el criterio a seguirse en cuanto al cómputo de los po[rc]ientos de participación de los apartamientos cuando se preparen e inscriban los documentos constitutivos del régimen. (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 281-2008, supra.
De esta manera se le añadió a la definición de aparta-mento del Art. 3 de la Ley del 2003 lo siguiente:
La medida superficial de aquellas áreas que sean asignadas en la escritura matriz y/o los planos constitutivos de un con-dominio como anejo de un apartamiento para su uso particular y con exclusión de los demás apartamientos, no será in-cluida para computar el área superficial del apartamiento en cuestión ni su por ciento de participación en los elementos co-munes del inmueble, a menos que el titular único de todos los apartamientos, o de haber más de un titular, todos los titulares por unanimidad, en la escritura matriz original para la cons-titución del régimen, y/o en aquellos documentos que se prepa-ren y otorguen para modificar un régimen ya existente, dis-pongan expresamente lo contrario para uno o más anejos, en *424 cuyo caso, sólo se tomarán en consideración para dichos pro-pósitos aquellos anejos que así se especifiquen en la escritura matriz original o los documentos para enmendar un régimen de propiedad horizontal existente. (Énfasis suplido). Art. 1 de la Ley Núm. 281-2008, supra.
Esta ley comenzó a regir inmediatamente después de su aprobación el 15 de agosto de 2008. Es norma conocida que el Art. 3 del Código Civil, 31 L.P.R.A. sec. 3, establece que las leyes no tendrán efecto retroactivo, si no dispusiesen expresamente lo contrario. En la Ley Núm. 281-2008, supra, no se expresa que su aplicación debe ser retroactiva, contrario a la especificidad expuesta en el citado Art. 44 de la Ley del 2003. Del mismo modo, como el principio de la irretroactividad de las leyes no es absoluto, hemos afir-mado que procede aplicar retroactivamente una ley aun-que no se haya dispuesto expresamente el efecto retroac-tivo, cuando dicha interpretación resulta ser más razonable de acuerdo con el propósito legislativo. Véase Díaz v. Srio. de Hacienda, 114 D.P.R. 865 (1983).
III
Según la normativa expuesta, es evidente que el Art. 44 de la Ley del 2003, supra, dispuso para que todos los con-dominios sujetos al régimen de propiedad horizontal atem-peraran sus escrituras y reglamentos para cumplir con sus disposiciones. Así, pues, desde el 2003, todos los condomi-nios incluso los constituidos antes de la aprobación de la Ley de 1976, deben aplicar la definición de apartamento que incluye los anejos (Art. 3) y el cómputo de la participa-ción sobre los elementos comunes (Art. 8). O sea, que desde el 2003 el condominio El Campeador, constituido en 1972, perdió la facultad de votar para cambiar el criterio de las cuestionadas participaciones que le confería la Sec. 13 de la Ley de 1976, supra. Por lo tanto, concluimos que los Consejos de Titulares de todos los condominios bajo el ré- *425 gimen de la horizontalidad no tienen discreción para per-manecer bajo las disposiciones de otro ordenamiento. Ello, pues la Ley del 2003 establece expresamente que el cóm-puto de participación se hará utilizando el área superficial y no el valor de la propiedad. Precisamente, eso era lo que se intentaba eliminar con la Ley del 2003 y así lo afirma-mos en Consejo Titulares v. Williams Hospitality, supra.
Una mayoría de este Tribunal señala que ya que el le-gislador no analizó el Art. 8 en el 2003, “sería arbitrario e injustificado concluir que lo que el legislador estatuyó en la Ley Núm. 157 de 4 de junio de 1976, con relación a la aplicación de la enmienda del Art. 8, lo trastocó la Ley de Condominios”. Opinión mayoritaria, pág. 408 esc. 15. De esta forma, una mayoría de este Tribunal revoca implícita-mente y sin justificación lo decidido en Consejo Titulares v. Williams Hospitality, supra. Diferimos de esta conclusión.
Como hemos señalado, a diferencia de la Ley de 1976, la del 2003 no da la opción a los Consejos de Titulares de regímenes constituidos previos a su aprobación de decidir si desean cambiar la manera de computar la participación sobre los elementos comunes. Por lo tanto, solo procede aplicar el cambio de fórmula y el resto de las disposiciones de la Ley del 2003. En ese sentido, es improcedente la vo-tación que llevó a cabo el Consejo de Titulares del condo-minio El Campeador e incorrecta la aprobación que de esta se hizo en la Opinión mayoritaria.
Por otra parte, sostenemos que la Enmienda del 2008 aplica prospectiva y no retroactivamente como sugiere una mayoría de este Tribunal. Ante la falta de expresión en la ley sobre la retroactividad, esta es la interpretación más razonable y acorde con la intención del legislador de acla-rar la confusión sobre los anejos en la creación de los regí-menes de propiedad horizontal. Por lo tanto, solo aquellos condominios que se constituyan según el régimen de pro-piedad horizontal a partir del 15 de agosto de 2008 tendrán la oportunidad, al redactar sus escrituras matrices, de in- *426 cluir expresamente que los anejos, además de ser para el disfrute exclusivo de un apartamento, se computarán para efectos de la participación de cada titular sobre los elemen-tos comunes. De no establecerlo así, automáticamente los anejos quedarán excluidos, a menos que los titulares así lo acuerden por unanimidad.
Sin embargo, una mayoría de este Tribunal resuelve —sin decirlo expresamente— que la Enmienda del 2008 aplica retroactivamente. De hecho, la Opinión mayoritaria expresa que esta enmienda es “la legislación vigente cuando los titulares del condominio El Campeador efectua-ron el cambio”. Opinión mayoritaria, pág. 413. Al mencio-nar “el cambio”, se refiere a la votación realizada por los titulares en el 2009, la cual ya indicamos era improcedente e innecesaria. Con esta apreciación, una mayoría de este Tribunal trata al condominio El Campeador, constituido en 1972, como si se hubiese constituido en el 2009. Este pro-ceder nos parece irrazonable, máxime cuando el proceso de inscripción y constitución del régimen de propiedad horizontal es riguroso.
Por el contrario, como hemos visto, el condominio El Campeador fue constituido en 1972 de acuerdo con la ley que utilizaba el criterio de valor de propiedad. Luego, desde el 2003 estaba obligado a utilizar el área superficial para el cómputo, por no haber votado para cambiar el cri-terio tras la aprobación de la Ley de 1976. Así se cumple con la retroactividad expresada en el Art. 44 de la Ley del 2003 y lo determinado en Consejo Titulares v. Williams Hospitality, supra. De esta manera, los titulares de El Campeador tenían que ajustar las participaciones para cumplir con la Ley del 2003. Necesariamente, ello conlle-varía un cambio en la participación de la señora Trigo Mar-garida que incluiría el área superficial de su apartamento con su anejo. En este punto finalizaría nuestro análisis, pues la Enmienda del 2008 no se debe utilizar para resolver la controversia ante nos. Ello, dado que esta enmienda *427 aplica prospectivamente a los condominios que se constitu-yeron de ese año en adelante.
Estamos convencidos de que aplicando lo anteriormente expuesto se cumple con los distintos propósitos principales de los estatutos en cuestión. A saber, el de la Ley de 1976 de cambiar el criterio por el del área superficial; de la Ley del 2003 de fortalecer la eficacia del régimen de propiedad horizontal para todos los condominios, y el de la Enmienda del 2008 de enmendar la definición de apartamento para aclarar la confusión al constituir nuevos condominios.
Desafortunadamente, son innumerables las consecuen-cias negativas que la decisión que se emite engendra sobre el estado de derecho vigente en el tema de propiedad horizontal. Por un lado, la Opinión mayoritaria revoca im-plícitamente sin fundamento alguno lo dispuesto en Con-sejo Titulares v. Williams Hospitality, supra, e ignora el texto claro del Artículo 44 de la Ley del 2003. Entonces, los condominios constituidos antes de 1976 seguirían teniendo la opción de escoger entre el criterio del valor de la propie-dad y el del área superficial. Además, solo podrían cam-biarse al criterio más reciente si los titulares logran la vo-tación estatuida en la Sec. 13 de la Ley de 1976.
Peor aún, todos los condominios constituidos antes del 2008 tendrán que modificar las participaciones de los titu-lares para excluir los anejos, contrario a la intención del legislador. Esto, pues los condominios constituidos antes del 2008 probablemente no incluyeron expresamente en sus escrituras matrices que los anejos van a formar parte del área superficial para efectos de la referida participación. Como única alternativa, los titulares, por unanimidad, tendrían que decidir que los anejos queden incluidos. Difícilmente se logrará la unanimidad requerida para ello. Tal como sucede en este caso con la señora Trigo Margarida, dueña del penthouse, es muy probable que aquel titular que tenga el anejo adscrito a su apartamento vote en contra de que se aumente su contribución para los *428 gastos de conservación de las áreas comunes. Con ello, este titular controlará, a su beneficio, el veto para no aportar a los gastos de conservación con los anejos. Sostenemos que este no fue el propósito del legislador.
Del mismo modo, la Opinión mayoritaria tiene como efecto que todos aquellos condominios que a partir del 2003 calcularon la participación de los elementos comunes sobre el área superficial, incluyendo los anejos, en cumplimiento de la ley, tengan que devolver el dinero pagado en exceso por aquellos titulares que tengan un anejo para su uso exclusivo. O, incluso, puede que todas las participaciones calculadas desde el 2003 no hayan sido aprobadas por una votación de sus titulares y tendrían que volver a utilizar el criterio del valor de la propiedad. Por el contrario, opina-mos que la Ley del 2003 aplica retroactivamente a todos los condominios y la Enmienda del 2008 prospectivamente a los condominios constituidos a partir del 15 de agosto de 2008. De esta manera, los desarrolladores o el titular que tenga a su cargo la redacción e inscripción de la escritura matriz podrá establecer expresamente que los anejos se incluyan como parte de la participación discutida y esto no dependerá únicamente de que todos los titulares, por una-nimidad, decidan si se incluyen o no.
IV
Por los fundamentos que anteceden, revocaríamos la Sentencia del Tribunal de Apelaciones y desestimaríamos la querella presentada por la señora Trigo Margarida.